UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SUSANNA HINOJOSA RODRIGUEZ, | § | |
|    Plaintiff | § | |
| | § | |
| V. | § | C.A. NO. C-09-95 |
| | § | |
| CHRISTUS SPOHN HEALTH | § | |
| SYSTEM, ET AL., | § | |
|    Defendants | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION
TO STRIKE AND DENYING IN PART AND GRANTING IN PART
MOTIONS FOR PROTECTIVE ORDER AND TO COMPEL**

Pending is defendant CHRISTUS Spohn Health System Corporation d/b/a CHRISTUS Spohn Hospital Corpus Christi–Memorial, named also as CHRISTUS Spohn Health System Corporation and CHRISTUS Health (CHRISTUS)'s motion for protective order (D.E. 124), plaintiff's motion to strike the motion for protective order (D.E. 129-2) and plaintiff's motion to compel production of documents with deposition notice of Sidney Nau (D.E. 131). Responses to the motions were filed (D.E. 128, 130, 132). All of the motions appear to relate to documents pertaining to the hospital's investigation of the incident which forms the basis of this lawsuit. The documents are identified together as "Bates Labeled Peer Review/Privilege 00001 to 00045," were submitted for *in camera* inspection, and will be referred to herein as the "investigation documents" or "documents."

## BACKGROUND

Plaintiff Rodriguez claims that she was sexually assaulted by CHRISTUS employee and defendant John Hill while she was a patient at CHRISTUS Spohn Hospital Corpus Christi–Memorial. She filed a number of claims against the hospital, its associated corporations and Hill. Several of her claims have been dismissed, but pending and relevant to these motions are her § 1983 action against Hill and CHRISTUS and her cause of action brought pursuant to TEX. CIV. PRAC. & REM. CODE § 81.010, in which she seeks an order requiring CHRISTUS to terminate Hill, court costs and attorney's fees.

Plaintiff seeks the investigation documents which were generated by CHRISTUS after hospital personnel became aware of her allegations of sexual assault. Defendant argues that the documents are privileged under the attorney-client and work-product protections, the medical committee privilege and the Health Insurance Portability and Accountability Act, Pub.L. No. 104-191, 110 Stat. 1936 (1996)(codified primarily in Titles 18, 26, and 42 of the United States Code) ("HIPAA"). Plaintiff counters that the documents are not privileged and that even if such documents were, CHRISTUS failed to timely comply with FED. R. CIV. P. 26(b)(5).

The first eleven pages of the investigation documents are labeled "TapRooT Incident Report," "TapRooT Corrective Actions Report" and "TapRooT Corrective Actions Status Tracking Report," wherein the incident is discussed along with its suspected causes and the corrective action to be taken (Peer Review/Privilege, pp. 1-11). The next two pages are a "'Yellow Form' Incident Initial Review" and contain a brief

handwritten description of the incident and names of staff person who may have had knowledge of the incident (Peer Review/Privilege, pp. 12-13). Pages fourteen to forty-four are copies of e-mails sent between hospital administrators and staff discussing the allegations and the investigation (Peer Review/Privilege, pp. 14-44). The final page contains handwritten notes about the incident and is not dated or otherwise identified (Peer Review/Privilege, p. 45).

## DISCUSSION

### A. Work Product Privilege

CHRISTUS argues that it is entitled to withhold the investigation documents because such documents fall under the work product doctrine, which is codified in Rule 26(b)(3):

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The work product doctrine "works to protect the mental process of an attorney from inquiry by opposing party." Smith v. Diamond Offshore Drilling, Inc., et al., 168 F.R.D. 582, 583 (S.D. Tex. 1996)(citing Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385 (1947)). The privilege applies to documents prepared in anticipation of litigation. FED.

R. CIV. P. 26(b)(3);  In re Kaiser Alum. & Chem. Co., 214 F.3d 586, 593 (5th Cir. 2000), cert. denied 532 U.S. 919, 121 S.Ct. 1354 (2001).  Litigation does not need to be imminent "'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" United Staes v. El Paso Co., 682 F.2d 530, 542 (5th Cir. 1982)(quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981));  Kaiser Alum., 214 F.3d at 593.  Documents and materials assembled in the ordinary course of business or pursuant to public requirements unrelated to the litigation, or for other nonlitigation purposes, are not entitled to work product protection.  FED. R. CIV. P. 26(b)(3), Advisory Committee Note.

The burden of establishing that a document is work product is on the party who asserts the claim.  Hodges, Grant & Kaufman v. United States Dept. Treas., 768 F.2d 719, 721 (5th Cir. 1985)(citing Hickman, 329 U.S. at 511-12, 67 S.Ct. at 394).  The burden of showing that it has a substantial need for the discovery and cannot, without undue hardship otherwise obtain the materials, is on the party seeking production.  Hodges, Grant & Kaufmann, 768 F.2d at 721.

It is not clear from the face of any of the investigation documents that the documents were prepared in anticipation of litigation.  The documents were generated by hospital personnel and circulated among them.  The initial report contains a section entitled "Notifications" and lists the names and titles of several hospital employees, none of whom were attorneys or appear to have been associated with legal counsel (Peer Review/Privilege, p. 1).  The report describes the incident as plaintiff and another witness

reported it, notes that plaintiff contacted the Corpus Christi Police Department, and lists hospital employees with whom investigators spoke and the comments they made.

In an affidavit, Richard Davis, the Chief Medical Officer for CHRISTUS Spohn Health System Corporation, explained that when a sentinel event[1] has occurred, a root cause analysis[2] is performed by a committee made up of members of the Risk Department, the Quality Department or both (Davis Aff., D.E. 125-2, ¶ 3).

> If a suspected sentinel event has occurred, the Committee . . . timely conducts a thorough root cause analysis to determine the cause(s) of the event, whether the conduct constitutes a sentinel event, and to formulate an appropriate action plan for the purpose of improving processes to prevent recurrences of such events. During this investigation, all relevant information and documents regarding the event are collected, prepared, submitted to, or generated at the direction of the [Professional Review Committee] for the purposes of investigating, analyzing, and communicating sentinel events so that a root cause analysis may be completed and an appropriate action plan or improvement in processes may be created to prevent the recurrence of such events.

(Id. at ¶ 6).

Regarding plaintiff's allegations, Davis stated that the incident was reported as a suspected sentinel event and the director of risk management, acting as an agent of the Professional Review Committee, created a sentinel event file and conducted an investigation. (Id. at ¶ 7).

---

[1] A "sentinel event" is an unexpected occurrence involving death or serious physical or psychological injury or risk thereof. (Affidavit of Richard Davis, M.D., D.E. 125-2, ¶ 3).

[2] A "root cause analysis" is a process for identifying the basic or causal factors that underlie variations in performance, including the occurrence or possible occurrence of a sentinel event. (Id.)

> The [Professional Review Committee] specifically authorized the creation of a Root Cause analysis team, which included the Director of Risk Management among others, to conduct a root cause analysis . . . *to determine the cause(s) of the event and to formulate an appropriate action plan for the purpose of improving processes to prevent recurrences of such events.* Additionally, litigation was anticipated in this case when the suspected sentinel event was reported on April 3, 2007 (the day of the event).

(Id.)(emphasis added).

The statement that "litigation was anticipated" is the only reference to litigation in the affidavit or in the investigation documents. The affidavit otherwise makes clear that the purpose of the investigation was to determine what happened and, if the incident were found to be a sentinel event, to prevent such an incident from happening again. Davis also stated that the investigation records are kept confidential to ensure candid discussion and improve the quality of patient care (Id. at ¶ ¶ 6, 7). Based on the report itself and Davis's comments, these documents do not appear to have been created primarily to aid in litigation, but rather to address the reported problem.

Nor do the e-mails which make up most of the rest of the documents appear to have been prepared or sent primarily to aid in possible future litigation. Rather, like the report, they discuss the incident, its causes, and how to prevent it from happening in the future. The other documents in the file were handwritten notes which also contain descriptions of the allegations and do not appear to have been prepared in anticipation of litigation.

While CHRISTUS may have been concerned about the possibility of future litigation, it appears that the primary motivating purpose behind the creation of the

6

documents was to assess the incident, determine its severity and take measures to prevent it from happening again. Accordingly, the documents are not work product and are not privileged from disclosure.

## B.  Medical Committee Privilege

The medical committee privilege is set forth in TEX. HEALTH & SAFETY CODE § 161.031 *et seq*. A medical committee includes, in relevant part, any committee of a hospital, hospital district or hospital authority, including a committee appointed ad hoc to conduct a specific investigation or one established under the bylaws or rules of the organization or institution. TEX. HEALTH & SAFETY CODE § 161.031(a) and (b). The governing body of a hospital or other medical organization may form a medical peer review committee, as defined in TEX. OCC. CODE § 151.002, or a medical committee to evaluate medical and health care services, with certain exceptions not relevant here. TEX. HEALTH & SAFETY CODE § 161.0315. The medical privileges are important in promoting free discussion in the evaluation of health care professionals and health services, but the right to evidence is also important, and therefore the privileges must be strictly construed. In re Living Centers of Texas, 175 S.W.3d 253, 258 (Tex. 2005).

A report prepared by a medical committee is subject to the same confidentiality and disclosure requirements as a report prepared by a medical peer review committee. TEX. HEALTH & SAFETY CODE § 161.0315(c), (e) and (f). See also In re Ching, 32 S.W.3d 306, 310, n. 1 (Tex. App. – Amarillo 2000, no pet.)(discussion regarding privileges is pertinent to both the peer review privilege and the medical committee

privilege). While a report prepared by a medical peer review committee or a medical committee generally is privileged the following exception applies:

> If a judge makes a preliminary finding that a proceeding or record of a medical peer review committee or a communication made to the committee is relevant to an anticompetitive action, or to a civil rights proceeding brought under 42 U.S.C. § 1983, the proceeding, record, or communication is not confidential to the extent it is considered relevant.

TEX. OCC. CODE § 160.007.

Defendant argues that the investigation documents are not relevant to plaintiff's § 1983 cause of action because the documents reflect actions taken by CHRISTUS after the incident, as opposed to before the incident. However, the argument is misguided. The investigation documents address the alleged sexual assault by defendant Hill and factors which may or may not have contributed to the alleged assault. Although the investigation necessarily occurred after the incident, an *in camera* review of the documents show that the documents are relevant to the issues raised in plaintiff's § 1983 cause of action. In her first amended complaint, plaintiff has alleged a theory of ratification by CHRISTUS policymakers (D.E. 141). Although the Fifth Circuit has severely limited the circumstances under which a theory of ratification may support liability,[3] plaintiff has alleged sufficient facts to entitle her to at least pursue discovery on

---

[3] See Grandstaff v. City of Borger, Texas, 767 F.2d 161 (5th Cir. 1985); Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 848 (5th Cir. 2009) (discussing ratification theory).

this theory of liability. Accordingly, the documents are not protected by the medical committee privilege.

In addition, because the documents are relevant to plaintiff's federal cause of action, the documents also are not privileged for purposes of plaintiff's state law claim. Although neither the Supreme Court nor the Fifth Circuit has resolved the issue of whether state or federal privilege law applies when state-law claims are present in a federal-question case under the federal court's supplemental jurisdiction, the court in Guzman v. Memorial Hermann Hospital System, No. H-07-3973, 2009 WL 427268 (S.D. Tex. 2009), noted that the majority of courts considering the issue have held that if the documents at issue are relevant only to a plaintiff's state law claims, the state law privilege applies, but if the documents are relevant to a plaintiff's federal claims, or to her federal and state claims, the privilege does not apply. In this case, because the investigation documents are relative to plaintiff's federal cause of action, the privilege does not apply to either of her claims.

## C. HIPAA

CHRISTUS argues that portions of the investigation documents are protected under HIPAA. Among other things, HIPAA prohibits hospital personnel from disclosing protected health care information to third parties. See, generally, 45 C.F.R. Part 164, Subpart E. However, there are exceptions to the disclosure prohibitions as set forth in relevant part in 45 C.F.R. § 164.512 (e):

(e) Standard: Disclosures for judicial and administrative proceedings.

9

> (1) Permitted disclosures.  A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

Defendant argues that it is not at liberty to disclose certain documents because the documents contain protected health information of someone who was a patient at CHRISTUS.  The documents contain the name of a woman, Keraleigh Braun, who was a patient at CHRISTUS at the same time plaintiff was a patient.  Plaintiff told Braun her allegations about what defendant Hill had done and Braun also alleged that she had an unwelcome encounter with Hill.  Defendant asserts that plaintiff has not complied with the HIPAA regulation because she has not provided satisfactory assurance that notice has been provided to Braun or any response received from the patient, and that without that assurance, it cannot release the documents.

Plaintiff does not disagree that she did not provide the assurance that Braun had been contacted, but points out that Braun provided an affidavit describing what happened at the hospital and also reported the incident to a police officer who prepared an offense report, both of which are public record (Affidavit of Keraleigh Braun, D.E. 128-9; Offense Report, D.E. 128-10).  A review of the affidavit, offense report and investigation documents reveals that there is nothing about Braun in the investigation documents that is not also in the affidavit, the police report, or both.[4]

Defendant is correct that it is not permitted to make the disclosure in response to plaintiff's discovery request without receiving satisfactory assurance from plaintiff that Braun was notified of the request or that reasonable efforts have been made to secure a qualified protective order.  45 C.F.R. § 164.512 (e)(1)(ii)(A).  Nevertheless, because a review of the documents shows that no protected health information will be revealed which is not already a matter of public record, defendant CHRISTUS is ORDERED to provide plaintiff with the investigation documents that refer to Braun.

## D.  Attorney-Client Privilege

Defendant argues that portions of the investigation documents are protected by the attorney-client privilege.  Specifically, defendant alleges that the TapRooT Corrective Actions Report and TapRooT Corrective Actions Status Tracking Report (Peer

---

[4] In fact, the only health information contained in any of the documents is the fact that Braun was a patient at CHRISTUS.

11

Review/Privilege, pp. 7-11) and some e-mail exchanges, referring to conversations with, but not addressed to, counsel (Peer Review/Privilege, pp. 19-21) are privileged.

Under the attorney-client privilege, "a corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services."  Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir. 1999)(citing 3 JACK B. WEINSTEIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE §§ 503.10, 503.11, at 503-14-15 (2d ed. 1999) and Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).  The exercise of the attorney-client privilege is a "question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents."  In re Auclair, 961 F.2d 65, 68 (5th Cir. 1992).

> The attorney-client privilege protects two related, but different communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communication from the client.

S.E.C. v. Brady, 238 F.R.D. 429, 438 (N.D. Tex. 2006)(citing United States v. Mobil Corp., 149 F.R.D. 533, 536 (N.D. Tex. 1993)).  However, the privilege does not protect against discovery of underlying facts from their source merely because those facts have been communicated to an attorney.  Upjohn, 499 U.S. at 395-396, 101 S.Ct. at 686-687.

In order to establish attorney-client privilege, the party claiming the privilege must show the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication was acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of serving primarily either (i) an opinion on law or (ii) legal service or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client.

Brady, 238 F.R.D. at 438 (citing Mobil, 149 F.R.D. at 536). Also protected are communications between corporate employees concerning matters pertinent to their job tasks if the information is sought by the corporation's attorney in order to formulate and render legal advice to the corporation. See Upjohn, 449 U.S. at 394-395, 101 S.Ct. at 685.

Regarding the TapRooT Corrective Actions Reports, as discussed above, the documents do not appear to have been prepared for an attorney or his subordinate, but rather were prepared by CHRISTUS staff to address and correct the incident reported by plaintiff. In fact, nothing about the documents indicates that they were shared with an attorney at all. Accordingly, these documents (Peer Review/Privilege, pp. 7-11) are not protected by the attorney-client privilege.

Regarding the e-mail exchanges, the exchanges were not between attorney and client. However, they do refer to services sought to be provided by the attorney and note that the attorney had made a request for information to be used in the provision of services. Accordingly, these e-mails (Peer Review/Privilege, pp. 19-21) are privileged.

### E.    Resolution of Summary Judgment Motions

CHRISTUS maintains that the District Court should decide their summary judgment motion on plaintiff's § 1983 claims against them (D.E. 109) before ruling on the privilege issues.[5]  In her response to the motion for summary judgment, plaintiff has requested time to conduct additional discovery. FED. R. CIV. P. 56.  In her amended complaint, plaintiff has alleged a theory of ratification by CHRISTUS policymakers (D.E. 141).  As mentioned earlier, even though the Fifth Circuit has severely limited the circumstances under which a theory of ratification may support liability, plaintiff has alleged sufficient facts to entitle her to at least pursue discovery on this theory of liability.  Plaintiff is entitled to discovery before she supplements her response to the motion for summary judgment.

### F.    Other Documents

In her motion to compel (D.E. 131), plaintiff seeks documents responsive to Requests for Production Nos. 1-7 in connection with the investigation into the allegation that defendant Hill assaulted plaintiff.  It is unknown whether defendants are in possession of documents, in addition to those produced for an *in camera* inspection.  Defendants provided no argument in support of their failure to produce such documents, if any such documents exist.  Plaintiff's requests for production are not overly broad or

---

[5]Plaintiff has filed a response to the motion for summary judgment on plaintiff's Section 81.010 claims (D.E. 106, 110) and has not asked for additional time to complete discovery on this issue.  The privilege issue appears to be unrelated to this motion, and it will be taken under advisement without any further delay.

vague.  To the extent that defendants are in possession of additional documents responsive to plaintiff's Requests for Production Nos. 1-7, plaintiff's motion to compel is GRANTED.

## CONCLUSION

Based on the foregoing, it is ORDERED that defendant's motion for protective order (D.E. 124) is GRANTED in part and DENIED in part.  The only documents subject to privilege are the e-mail exchanges identified as Peer Review/Privilege, pp. 19-21, which are protected by the attorney-client privilege.  The remainder of the documents, identified as Peer Review/Privilege, pp. 1-18 and pp. 22-45 are not subject to any privilege and should be turned over to plaintiff as partial responses to her requests for production.  Plaintiff's motion to strike defendant's motion for protective order (D.E. 129-2) is DENIED.  Plaintiff's motion to compel production of documents with deposition of Sidney Nau (D.E. 131) is GRANTED in part and DENIED in part.  As stated above, defendant is ORDERED to turn over to plaintiff all of the inspection documents except for those identified as Peer Review/Privilege, pp. 19-21, and all documents, if any exist, discussed in Section F above.

ORDERED this 18th day of August, 2011.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE