UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SUSANNA HINOJOSA RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. C-09-95 |
| CHRISTUS SPOHN HEALTH SYSTEM | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION & ORDER

Pending before the Court are Defendants CHRISTUS Spohn Health System Corporation

d/b/a CHRISTUS Spohn Hospital Corpus Christi–Memorial (also sued as CHRISTUS Spohn

Health System Corporation) and CHRISTUS Health's (collectively "CHRISTUS") Motion for

Partial Summary Judgment on Plaintiff's Due Process Claims Under 42 U.S.C. § 1983 (Dkt. No.

109), Motion for Partial Summary Judgment on Plaintiff's Equal Protection Claims under 42

U.S.C. § 1983 (Dkt. No. 175), and Motion for Judgment on the Pleadings Regarding Plaintiff's

Claim under Texas Civil Practice and Remedies Code Section 81.010 (Dkt. No. 177), to which

Plaintiff Susanna Hinojosa Rodriguez ("Rodriguez") has responded (Dkt. Nos. 117 & 181; 182;

and 183, respectively), and CHRISTUS has replied (Dkt. Nos. 123 & 184-A; 186-A; and 189-A,

respectively).[1] Rodriguez has also filed a Motion and Amended Motion for Partial Summary

Judgment on Liability on Plaintiff's Texas Civil Practice & Remedies Code § 81.010 Claim

(Dkt. Nos. 178 & 179), to which CHRISTUS has responded (Dkt. No. 185).

---

1. The CHRISTUS Defendants filed motions for leave to reply with respect to their Motion for Partial Summary Judgment on Plaintiff's Due Process Claims Under 42 U.S.C. § 1983 (Dkt. No. 184), Motion for Partial Summary Judgment on Plaintiff's Equal Protection Claims Under 42 U.S.C. § 1983 (Dkt. No. 186), and Motion for Judgment on the Pleadings Regarding Plaintiff's Claims Under Texas Civil Practice & Remedies Code Section 81.010 (Dkt. No. 189), to which Plaintiff filed three separate responses in opposition (Dkt. Nos. 187, 188, and 190, respectively). In the interests of justice, the Court will consider all filings presently before it. Accordingly, CHRISTUS' motions for leave to reply (Dkt. Nos. 184, 186, and 189) are **GRANTED**.

## I. Factual and Procedural Background

On October 28, 2008, Rodriguez filed a healthcare liability suit in Texas state court against CHRISTUS, the Nueces County Hospital District (the "Hospital District"),[2] and John Hill ("Hill"), a mental health technician employed by CHRISTUS. Rodriguez alleged that, on or about April 1, 2007, she "was voluntarily admitted as a patient to [CHRISTUS'] Behavioral Medicine Department for treatment of a serious mental health condition–bi-polar disorder and other mental health conditions." (Pl. First Amended Pet., Dkt. No. 1, Ex. 9, ¶ 10.) Rodriguez claimed that during her hospitalization, Hill sexually assaulted her "by touching [her] shoulders with his hand, telling [her] how beautiful she was and how beautiful her breasts were. Defendant Hill further told [her] that he could find a 'good place for a good night' and that he would 'show her his big dick.'" (*Id.* ¶ 36.) Hill allegedly assaulted Rodriguez again that same day after lunch, this time "by approaching [her] from behind; grabbing and fondling her breasts and rubbing his crotch against her buttocks and lower back pressing his penis against her and stating 'Do you want my black dick?'" (*Id.* ¶ 37.) Rodriguez claimed that she reported the assault to nursing staff, but CHRISTUS' "fail[ure] to take any prompt and appropriate remedial action[] left [her] scared, intimidated, and fearing for her safety," so she asked to be discharged. (*Id.* ¶¶ 39–40.) Rodriguez further alleged that "[i]n the aftermath of the assaults, [her] condition significantly worsened and [she] was diagnosed with Post Traumatic Stress Disorder" which "culminated in [her] having suicidal thoughts and [she] has attempted suicide as a result." (*Id.* ¶¶ 54, 56.)

CHRISTUS filed a plea to the jurisdiction in Texas state court seeking dismissal of Rodriguez' suit on the grounds of governmental immunity. CHRISTUS argued that because the Hospital District contracts out to CHRISTUS the responsibilities of indigent health care required by Texas law, CHRISTUS is a "hospital district management contractor," which is defined by

---

2. The Hospital District has since been dismissed as a defendant to this lawsuit.

statute as "a nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law." TEX. HEALTH & SAFETY CODE § 285.071. Section 285.072 further provides that a "hospital district management contractor in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of Chapters 101, 102, and 108, Civil Practice and Remedies Code[.]" TEX. HEALTH & SAFETY CODE § 285.072. Thus, although it is a private corporation, CHRISTUS claimed that it was entitled to governmental immunity on Rodriguez' healthcare liability claims.

In response to CHRISTUS' assertion that it is a governmental unit, Rodriguez filed her First Amended Petition on April 2, 2009, adding causes of action under TEX. CIV. PRAC. & REM. CODE § 81.010 and under 42 U.S.C. § 1983 for violations of her right to substantive due process and equal protection. Based on Rodriguez' pleading of § 1983 claims, on April 30, 2009, the Hospital District, with CHRISTUS' consent, timely removed the case to this Court, where it was originally assigned to then-Chief Judge Hayden Head. Rodriguez subsequently filed Plaintiff's Original Complaint (Dkt. No. 11) in this Court, reasserting all of the claims she had previously alleged in state court.

On October 15, 2009, CHRISTUS filed three motions to dismiss all of Rodriguez' claims against it: (1) Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1) or, Alternatively, Motion for Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 19); (2) Defendant CHRISTUS Health's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. No. 20); and (3) Defendants' Motion for Judgment on the Pleadings

Regarding Plaintiff's 42 U.S.C. § 1983 Claims (Dkt. No. 21).[3] After Judge Head recused, the case was reassigned to Judge Janice Graham Jack. (Dkt. No. 44.) With one exception, Judge Jack denied CHRISTUS' 12(b)(1) motions, ruling that CHRISTUS did not have immunity from suit for purposes of Rodriguez's state-law claims and also that CHRISTUS was acting under color of state law for purposes of 42 U.S.C. § 1983. (Dkt. No. 54.)

After Judge Jack recused and this action was reassigned to the undersigned judge, CHRISTUS filed a motion for reconsideration of Judge Jack's ruling on Rodriguez' state-law claims (Dkt. No. 58), which this Court denied (Dkt. No. 80). CHRISTUS subsequently filed an interlocutory appeal of Judge Jack's rulings on Rodriguez' state-law claims. (Dkt. No. 84.) The United States Court of Appeals for the Fifth Circuit vacated Judge Jack's ruling and found that CHRISTUS, as a hospital district management contractor, did qualify for limited governmental immunity under the Texas Tort Claims Act, thus dismissing all of Rodriguez's state-law claims against CHRISTUS "except to the extent that [any Chapter 81 claim] falls under § 81.010." *Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010).

Rodriguez' only remaining causes of action against CHRISTUS following remand were those under Tex. Civ. Prac. & Rem. Code § 81.010 and her due process and equal protection claims under 42 U.S.C. § 1983, which Rodriguez subsequently realleged when she filed her First Amended Complaint on August 5, 2011 (Dkt. No. 141). CHRISTUS now moves for summary judgment on Rodriguez' constitutional claims under § 1983 and moves for judgment on the pleadings on Rodriguez' state-law claim under § 81.010.

---

3. On the same date, Rodriguez filed a Motion for Declaratory Judgment, seeking a declaratory judgment that Texas Health and Safety Code §§ 285.071 and 285.072 are unconstitutional (Dkt. No. 22), which was denied (Dkt. No. 157).

4

## II. CHRISTUS' Motions for Partial Summary Judgment

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim

5

asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## B. Evidentiary Objections

Before considering the substantive merits of CHRISTUS' motions for summary judgment, the Court first notes that both Parties have objected to portions of the opposing side's summary judgment evidence. The Court has considered both the evidence proffered and the Parties' objections, and to the extent the Court has regarded portions of the evidence as relevant, admissible, and necessary to the resolution of particular summary judgment issues, it hereby overrules the evidentiary objections. To the extent the Court has not relied on other evidence about which a party complains, the remaining objections are denied as moot.

## C. Motion for Partial Summary Judgment on Plaintiff's Due Process Claims

### 1. Due Process Standard

The Constitution provides that States may not deprive any person of life, liberty, or property without due process of law. U.S. CONST. AMEND. XIV, § 1. In order for a plaintiff to prevail on a due process claim, she must identify a constitutionally protected life, liberty, or property interest and then prove that government action resulted in deprivation of that right. *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991).

A governmental entity may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, in order to establish a claim against a governmental entity under § 1983, a plaintiff must prove that: (1) a constitutional violation occurred, (2) an

injury resulted from a custom or policy, (3) a causal connection between the constitutional violation and the custom or policy, and (4) deliberate indifference. *See generally*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 411–12 (1997); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

An offending policy may be an official policy adopted and promulgated by the unit of government, or a "persistent, widespread practice of [government] officials or employees" that is "so common and well settled as to constitute a custom that fairly represents [governmental] policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). A "custom" rising to the level of official policy may, in appropriate cases, encompass allegations that a policymaker failed to act affirmatively, including a failure to adequately train a subordinate. *Connick v. Thompson*, — U.S. —, 131 S.Ct. 1350, 1359 (2011). A governmental entity is liable only when the official policy is the "'moving force' behind the injury alleged. That is, a plaintiff must show that the [governmental] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [governmental] action and deprivation of federal rights." *Brown*, 520 U.S. at 404. Thus, in order to establish a claim under § 1983 for failure to properly investigate, train, and supervise, a plaintiff must show that she was deprived of a constitutional right as a direct and proximate result of an official policy or custom attributable to the defendant. *Pineda*, 291 F.3d at 332.

"To satisfy [§ 1983], a [government entity]'s failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 131 S.Ct. at 1360 (quoting *Canton*, 489 U.S. at 395). In order to establish deliberate indifference, the plaintiff must show that the governmental entity disregarded a known or obvious consequence of its actions; specifically, the plaintiff must establish that the defendant: (1) was aware of the facts from which an inference of an excessive

risk to the plaintiff's health or safety could be drawn, and (2) the defendant actually drew an inference that such potential for harm existed. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 254–55 (5th Cir. 2005).

### 2. Analysis

Rodriguez claims that CHRISTUS violated "her substantive due process rights of bodily integrity under the Fourteenth Amendment." (Pl. First Am. Compl., Dkt. No. 141 ¶ 1.) In support of this claim, Rodriguez testified during her deposition that as she was walking out of the hospital cafeteria after breakfast on April 3, 2007, Hill approached her from behind, grabbed and fondled her breasts, rubbed his penis against her buttocks and lower back, and asked, "Do you want my black dick?" (Rodriguez 4/28/2010 Dep., Dkt. No. 181, Ex. 4 at 59:12–61:5.) Rodriguez also submitted a police report that was completed the day after the alleged assault took place. (4/4/2009 Police Report, Dkt. No. 117, Ex. 6.) According to the police report, Rodriguez told the officer that "in the morning, [Hill] had been touching her shoulders with his hand. He also told her, 'Your [*sic*] beautiful, you are beautiful, you have beautiful breasts.' [Hill] also told [Rodriguez] that he could find a good place for a good night and that he would show her what [*sic*] he had a big dick." (*Id.* at 4.) Rodriguez also told the officer that "[a]round 12 Noon (lunch), [Hill] grabbed her from behind and wrapped his arms around her upper body and squeezed her. He also rubbed his penis (still clothed) on her lower back-butt area." (*Id.*)

### a. Constitutional Violation

CHRISTUS does not dispute that Rodriguez has a liberty interest in her bodily integrity that is protected by the Fourteenth Amendment. CHRISTUS further acknowledges that the Fifth Circuit has recognized that an assault of an egregious nature, whether physical or sexual, can rise to the level of a substantive due process violation under the Constitution, citing *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406–07 (5th Cir. 1995) (repeated sexual exploitation

and statutory rape of a girl by teacher constituted "an actionable deprivation of her liberty interest in freedom from sexual abuse by persons wielding state authority"); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir. 1994) (sexual fondling and statutory rape of 15-year old girl by teacher constituted violation of student's bodily integrity); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (teacher's lashing of a second grade student to a chair for two days violated the student's substantive due process right to bodily integrity). However, CHRISTUS claims that Hill's alleged behavior, though potentially rising to the level of a common law assault claim, is not so egregious, brutal, or inhumane so as to shock the conscience and require constitutional protection.

Unlike *Rains County ISD*, *Taylor ISD*, and *Ysleta ISD*, CHRISTUS argues, there are no allegations of prolonged sexual exploitation of a minor over a period of several months, nor does Hill's alleged behavior demonstrate a prolonged physical restraint that deprived Rodriguez of basic necessities. Instead, as in *Hawkins v. Holloway* and *Petrone v. Cleveland State University*, the alleged inappropriate behavior took place with no skin touching skin, lasted for at most a few seconds, and involved at most two inappropriate suggestions of further sexual contact. *See Hawkins v. Holloway*, 316 F.3d 777, 785 (8th Cir. 2003) (sheriff's grabbing of male employees' clothed genitals, buttocks, and chests did not amount to violation of their substantive due process rights); *Petrone v. Cleveland State Univ.*, 993 F. Supp. 1119, 1126 (N.D. Ohio 1998) (holding that allegations of a supervisor's sexual advances, including one where the supervisor slid his hand up a woman's thigh, did not state a substantive due process claim), *disapproved of on other grounds in Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000). As such, CHRISTUS maintains that even if the facts as alleged by Rodriguez are taken as true—which Hill denies— these allegations do not rise to the level of a constitutional violation of her bodily integrity.

9

Rodriguez argues that what distinguishes her case from those cited by CHRISTUS is that she was hospitalized for her own safety because she was suicidal, Hill was aware of her suicidal tendencies and history of sexual abuse, and Hill then used his position as a mental health technician to sexually exploit her. According to Rodriguez, Hill's conduct toward her is the "type of physical force and emotional damage that may cause a patient to become suicidal," and as a result of Hill's conduct, Rodriguez developed Post Traumatic Stress Disorder and attempted suicide. (Dkt. No. 117 at 15.) According to Rodriguez, the fact that Hill would assault her during her hospitalization is egregious and shocks the conscience, and is therefore a violation of her substantive due process rights.

In *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, the Fifth Circuit acknowledged that "[t]he Supreme Court recognized the shocks the conscience standard in *Rochin v. California*, 342 U.S. 165 (1952)," and explained that:

> Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that "violates the decencies of civilized conduct"; conduct that is "so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency"; conduct that "interferes with rights implicit in the concept of ordered liberty"; and conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

*Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, —F.3d —, 2012 WL 976349, at *15–16 (5th Cir. Mar. 23, 2012) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 & n.8 (1998) (citation and internal quotation marks omitted in original)).

Applying the standard set forth in *Doe ex rel. Magee*, and taking Rodriguez' allegations as true–namely that Hill was aware of Rodriguez' suicidal tendencies and history of sexual abuse and used his position as a mental health technician to sexually grope and proposition her while she was hospitalized and under his watch and care–the Court finds that Rodriguez has sufficiently alleged a constitutional violation based on the invasion of her bodily integrity. *See*

*Williams v. Prudden*, 67 F. App'x 976, 977 (8th Cir. 2003) (inmate "sufficiently state[d] an Eighth Amendment claim by alleging that [prison guard] forcibly ground his pelvis against her, grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her"); *Hawkins v. Holloway*, 316 F.3d at 782, 789 (recognizing an actionable claim for "invasion of her bodily integrity" where sheriff's deputy alleged that sheriff made vulgar comments to her, "once came up from behind her and placed his hands around her and grabbed her breasts," and "on several occasions . . . stood next to her and pulled her close to him . . . [o]ften times . . lay[ing] his hand on [her] breast); *Haberthur v. City of Raymore*, 119 F.3d 720, 723 (8th Cir. 1997) (recognizing an actionable claim for a substantive due process violation where plaintiff alleged that, on one occasion, a police officer placed his hands under her shirt, fondled her breast, and caressed her body while making sexually suggestive comments to her).

### b. Custom or Policy

#### i. Inadequate Training

CHRISTUS has offered substantial evidence establishing that Hill, along with other employees at CHRISTUS, was adequately trained on principles of sexual harassment, diversity in the workplace, workplace violence, and the rights of mental health patients. First, Hill testified during his deposition that he was provided training on the Patient Bill of Rights and sexual harassment policies during his time at CHRISTUS. (Hill Dep., Dkt. No. 109, Ex. 1 at 48:3-22; 62:22-24.) Prior to the events giving rise to this litigation, Hill received the following training relevant to this action: (1) Abuse and Neglect: 2/31/2003; (2) Patient Rights: 6/21/2006; (3) Patients Rights in the Mental Health Setting: 2/20/2004; (4) Sexual Harassment in the Workplace: 6/21/2006; (5) Code of Ethics: Foundation of Integrity & Ethics: 6/14/2006; (6) Code of Ethics: The 2004 Code of Ethics: 6/14/2006; (7) Code of Ethics: Regulatory

Background and System Resources: 6/14/2006; (8) Abuse, Neglect, and Exploitation: 2/20/2004;

(9) Patient Relations and Compliance: 6/21/2006; (10) HIPAA Patient Care: 4/15/2003; (11)

Diversity in the Workplace: 6/14/2006; (12) Workplace Violence: 6/21/2006; 2/3/2007; (13)

Identifying and Assessing Victims of Abuse and Neglect: 2/03/2007; and (14) Crisis Prevention

Institute (CPI) Course: 2/31/2003; 2/20/2004; 8/17/2005. (Hill Health Stream Report, Dkt. No.

109, Exhs. 4, 5.) Hill's former supervisor at CHRISTUS, Oscar Solis, explained that the CPI

training that Hill received "was approximately four hours long . . . And, basically it taught you

how to deescalate people, how to respect personal space, and how to protect yourself or protect

other patients from combative patients." (Solis Dep., Dkt. No. 109, Ex. 6 at 36:24–37:6.) Solis

further testified that employees were instructed during CPI training that they were "supposed to

give patients their personal space. And the personal space is usually—and it's in the training—an

arm's length away." (*Id.* at 37:23–38:1.)

CHRISTUS has offered further evidence that it had the following written policies in

place concerning harassment and patient rights prior to April 2007: (1) "Abuse/Neglect" Policy,

which sets forth a specific procedure for employees to follow when there has been an accusation

that an employee injured, mistreated, abused, or neglected a patient (Dkt. No. 109, Ex. 7 at 9–

10); (2) "Workplace Principles" Policy (formerly known as "Harassment Policy"), which

provides employees with guidance on CHRISTUS' commitment to a harassment-free workplace

and specifically defines unwelcomed harassment to include "gestures or behaviors which

threaten, intimidate or are unwelcome," including "sexual advances, requests for sexual favors,

inappropriate touching of a sexual or abusive nature and other verbal or physical conduct of a

sexual nature" (*Id.*, Ex. 8  at 1); (3) "Bill of Rights for Mental Health Patients" Policy, the

purpose of which is to "assure that the patients or family/guardian of patients admitted to

CHRISTUS Spohn Health System's Behavioral Medicine Department are informed of their

patient rights" (*Id.*, Ex. 9 at 1); and (4) "Patient Rights and Responsibilities" Policy, which was created to provide a "written resource document that outlines CHRISTUS Spohn Health System's philosophy of patient rights" (*Id.*, Ex. 10 at 1.)

Rodriguez argues that CHRISTUS is relying on policies relevant to sexual harassment between employees; however, "[t]he 'training' that CHRISTUS points to is not relevant to: patient boundaries, sexually inappropriate conduct with patients, and sexual harassment of patients." (Dkt. No. 181 at 50.) Rodriguez makes repeated references to the concept of "patient boundaries," arguing that "[t]here is no evidence that CHRISTUS has a policy regarding patient boundaries relevant to inappropriate sexual conduct between employees and patients" and "[t]here is no evidence that Mr. Hill was trained in regard to patient boundaries in a sexual context which is the training and policy issue in this case. (*Id.* at 3, 55.)

Contrary to Rodriguez' position, the mere fact that CHRISTUS' training programs did not use the specific phrase "patient boundaries" does not negate the totality of its training programs. Using common sense, any employee could conclude that the sexual harassment training they received applies to all contact with other individuals, not just fellow employees. As the Tenth Circuit explained in *Barney v. Pulsipher*:

> Even if the courses concerning gender issues and inmates' rights were less than adequate, we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.

*Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998) (quoting *Andrews v. Fowler,* 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."). Similarly, the Court finds that, given all the other training CHRISTUS provided employees regarding sexual harassment and patient rights, specific training

on "patient boundaries" hardly seems necessary for a mental health technician to know that sexually assaulting patients is inappropriate behavior.

As further evidence that CHRISTUS had no policy against sexual conduct between staff and patients, Rodriguez claims that CHRISTUS Director of Risk Management, Sidney Nau ("Nau"), admitted that such conduct was "a long-standing behavioral–behavior and was practiced by many staff members." (Nau Dep., Dkt. No. 117, Ex. 13 at 61:7-9.) However, a full examination of Nau's testimony reveals that Nau explicitly stated that she was referring to staff members' practice of hugging patients, not engaging in "sexual conduct" with them. (*Id.* at 63:9-15.) There is a vast difference between hugging and the allegations that Rodriguez has made against Hill in this action.

### ii. Ratification

Rodriguez next argues that CHRISTUS ratified Hill's behavior when "it did not take appropriate steps to admit that Mr. Hill's conduct was in error and "assured a result that Mr. Hill did nothing wrong by not conducting an inappropriate [*sic*] investigation and by failing to properly discipline Mr. Hill." (Dkt. No. 181 at 56.) Specifically, Rodriguez claims that CHRISTUS failed to investigate all claims against Hill; failed to interview Rodriguez; failed to make appropriate reports with the State of Texas about Hill's conduct; failed to train Hill as recommended by the State of Texas, and failed to take other actions in order to justify maintaining Hill's employment. According to Rodriguez, CHRISTUS' ratification of Hill's conduct "is evidence of the relevant policies before the deprivation." (*Id.* (citing *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004)).) *See also Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

CHRISTUS maintains that Hill was appropriately not terminated, given that a proper investigation was performed by CHRISTUS and the Texas Department of State Health Services

(TDSHS), and such claims were rendered unsubstantiated. (Nau Dep. at 37:17-20; TDSHS Records, Dkt. No. 181, Ex. 14 at 3.) Hill was also immediately suspended while the investigation was pending (TapRooT Incident Report, Dkt. No. 181, Ex. 8 at 1), and he was required to attend counseling sessions on his days off (Hill Dep. at 46:3–47:10).

CHRISTUS further argues even if its investigation was inadequate or otherwise flawed, CHRISTUS' post-incident conduct and decision not to terminate Hill are not relevant because the theory of ratification has been limited by the Fifth Circuit to "extreme factual situations," and "unless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Worldwide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009); *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 170 (5th Cir. 1985)). The Fifth Circuit has further held that ratification "does not stand for the proposition that if a policymaker defends his subordinates and if those subordinates are later found to have broken the law, then the illegal behavior can be assumed to have resulted from an official policy." *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986). Similarly the First Circuit has rejected a district court's suggestion that a city had ratified a police officer's action by clearing him and finding that he had acted in accordance with the police department's policies. *Kibbe v. City of Springfield*, 777 F.2d 801, 809 n.7 (1st Cir. 1985) (noting that the court was "unconvinced that a failure to discipline [the officer] or other officers amounts to the sort of ratification from which a jury properly could infer municipal policy").

Based on existing Fifth Circuit precedent, the Court finds that, even if CHRISTUS' investigation into Rodriguez' claims was inadequate, this alone is insufficient to establish a custom or policy for purposes of § 1983 liability. *See Peterson v. Fort Worth*, 588 F.3d 838, 852

(5th Cir. 2009) (holding that even if there was error in post-incident investigation into police officer's conduct, the court could not conclude that city maintained an official policy of condoning excessive force); *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) (finding that city's failure to investigate and discipline in that case did not rise to the level of custom or policy, noting that "it is nearly impossible to impute lax disciplinary policy to the city without showing a pattern of abuses that transcends the error made in a single case"); *DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262, 1999 WL 274606, *2 (5th Cir. 1999) (rejecting plaintiffs' assertion that the school's insufficient investigation was actionable under § 1983 because "[t]he Due Process Clause is simply not implicated by a *negligent* act of an official causing *unintended* loss of injury to life, liberty or property") (emphasis in original).

In sum, the Court finds that CHRISTUS had a policy of adequately training its employees with respect to patients' rights and the inappropriateness of sexual harassment of any individual, including patients. The Court further finds that CHRISTUS did not ratify Hill's conduct when it refused to terminate his employment after its investigation, as well as the investigation performed by the Texas Department of Health, concluded that Rodriguez' allegations were unsubstantiated.

### c. Motivating Factor

Even if CHRISTUS' allegedly inadequate response to Rodriguez' complaint about Hill did support a finding that CHRISTUS' policy and training regarding physical contact between staff and patients was inadequate–which the Court does not find–the Fifth Circuit has explained that while post-incident conduct "might provide evidence of the content of a municipality's policies," it cannot be linked to causation:

> That the policymakers failed to take disciplinary action in response to [Plaintiff]'s complaints does not show that they knew of and approved the illegal character of the arrest, determining that it accorded with municipal policy. Second, it is hard to

see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well after the fact of the constitutional deprivation, could have caused the deprivation.

*Milam v. City of San Antonio*, 113 Fed. App'x 622, 628 (5th Cir. 2004). Other courts have also held that a single flawed investigation–or even a failure to complete an investigation at all–is insufficient to prove causation in a § 1983 setting. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (finding that inadequate investigation into shooting could not have caused deputies to use excessive force where plaintiff offered no evidence that any previous investigations were inadequate or that such investigations were a moving force in deputies actions); *Bolander v. Taser Int'l, Inc.*, 2009 WL 2004379, at *16 (S.D. Fla. July 9, 2009) ("Even if the City conducted no investigation after the incident, Plaintiffs could not show that the failure to investigate caused the use of excessive force. A different result would simply result in respondeat superior liability.")

Finally, Rodriguez' own summary judgment evidence shows that another male mental health technician was terminated from CHRISTUS for engaging in inappropriate sexual behavior with a patient shortly before April 2007. (Josephine Rodriguez Dep., Dkt. No. 182, Ex. 5 at 30:22–31:13.) Thus, Rodriguez cannot show that CHRISTUS had a custom or policy of ignoring such conduct, nor that Hill was motivated to assault her based on CHRISTUS' alleged custom of refusing to investigate or discipline staff based on similar patient complaints. *See Mettler*, 165 F.3d at 1205.

### d. Deliberate Indifference

In support of her claim that CHRISTUS was deliberately indifferent to a known risk to her health and/or safety, Rodriguez points to evidence that during Nau's investigation into Rodriguez' allegations against Hill, one nurse said she had seen Hill "hugging patients and other staff and she said it made her uncomfortable," another nurse said that Hill "made her

17

uncomfortable the way he touched the female staff and patients," and a third staff member said Hill would "go around hugging people and demonstrated that he would come up from behind and drape his arms over your shoulders." (Nau Investigation, Dkt. No. 181, Ex. 8, CSM 004692–94.)

CHRISTUS acknowledges that the discipline report it created for Hill after its investigation into Rodriguez' allegations states that complaints were made from "patients and fellow associates about inappropriate professional conduct" by Hill and that "Hill needs to realize and understand boundaries with patients and co-workers." (Associate Discipline Form, Dkt. No. 109, Ex. 11, at 1.) However, the report specifically states that Hill had not "been previously warned and/or probated for the same or similar reason." (*Id.*) To the contrary, Solis and CHRISTUS Human Resources Director Sylvia Guzman both testified that Hill was a good employee and that they were unaware of any complaints about his behavior prior to April 2007. (Solis Dep. at 42:25–43:10; Guzman Dep., Dkt. No. 181, Ex. 11 at 78:10–79:4.) Nau's post-investigation report also indicated that all three female staff members who had witnessed Hill hugging patients and staff on prior occasions admitted that they had never brought their concerns about Hill to anyone's attention. (Nau Investigation, CSM 004692–94.) Finally, one of Hill's co-workers, Thelma Vasquez, testified that other than the allegations made by Rodriguez in April 2007, she did not have any knowledge of claims of inappropriate conduct involving Hill. (Vasquez Dep., Dkt. No. 109, Exh. 2, 15:2-6; 26:-5.)

Rodriguez has also presented evidence that, on the same afternoon she complained to CHRISTUS staff about Hill, another female patient complained that Hill approached her while she was resting, patted her on the buttocks, and convinced her to pull up her shirt so that he could see her tattoo, which caused the patient to partially expose her breast to Hill. (TapRooT Incident Report at 1.) However, because this complaint was not made to CHRISTUS until after the

18

alleged incident with Rodriguez and Hill had already occurred, it could not have alerted CHRISTUS to a potential risk to Rodriguez' health or safety. Likewise, despite Rodriguez' claim that Hill had previously sexually assaulted her when she was hospitalized on another occasion in early 2007, Rodriguez admitted during her deposition that she did not report this conduct to anyone at CHRISTUS. (Rodriguez 4/28/2010 Dep. at 53:2–54:4.)

Because Rodriguez has not set forth evidence of any previous incidents that would have given CHRISTUS actual or constructive notice that the specific conduct alleged here might occur, CHRISTUS could not have been aware of any alleged risk to Rodriguez' health or safety, nor deliberately disregarded such risk.

In sum, the summary judgment evidence conclusively establishes that CHRISTUS had a custom and policy of properly training its employees and did not act with deliberate indifference to Rodriguez' health or safety. Thus, the Court finds that CHRISTUS' Motion for Partial Summary Judgment on Plaintiff's Due Process Claims Under 42 U.S.C. § 1983 should be **GRANTED**.

### C. Motion for Partial Summary Judgment on Plaintiff's Equal Protection Claims

#### 1. Equal Protection Standard

The Equal Protection Clause of the Fourteenth Amendment is essentially a mandate that all persons similarly situated be treated alike. *Qutb v. Strauss*, 11 F.3d 488 (5th Cir. 1993) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985)). Courts conduct an equal protection inquiry only "if the challenged government action classifies or distinguishes between two or more relevant groups." *Id.* To sustain an equal protection claim, a plaintiff must establish that she was treated differently than a similarly situated individual. *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). A plaintiff must also demonstrate that the acts of the

government official in question were motivated by improper considerations, such as sex, race, religion, or the desire to prevent the exercise of a constitutional right. *Id.*

Finally, like claims for due process violations under § 1983, to hold a governmental entity liable for an equal protection violation requires proof of an official policy or custom and a violation of constitutional rights whose moving force is the policy or custom. *Pineda*, 291 F.3d at 328.

### 2. Analysis

Rodriguez claims that CHRISTUS violated her rights under the Equal Protection Clause "based upon gender, female, and mental disability." (Pl. First Am. Compl. ¶ 1.) In support of her equal protection claim, Rodriguez relies upon the same set of facts and evidence giving rise to her due process claim, namely her alleged sexual assault by Hill. CHRISTUS argues that, even taking Rodriguez' sexual assault allegations as true, her equal protection claim fails because the Equal Protection Clause is not a constitutional vehicle through which an individual may claim legal remedies for sexual assault. CHRISTUS further argues that Hill's actions cannot be imputed to CHRISTUS for purposes of equal protection liability because CHRISTUS had policies in place to fully train its employees with the intent of eliminating unlawful discrimination.

#### a. Constitutional Violation

Rodriguez claims that "[t]he Fifth Circuit recognizes the existence of a claim under 42 U.S.C. §1983 for violation of the Equal Protection Clause of the Fourteenth Amendment related to gender discrimination/sexual harassment." (Dkt. No. 172 at 1 (citing *Sanches v. Carrollton-Farmers Branch Indep. School Dist.*, 647 F.3d 156 (5th Cir. 2011); *Sharp v. City of Houston*, 960 F. Supp. 1164, 1177 (S.D. Tex.1997), *aff'd Sharp v. City of Houston*, 164 F.3d 923 (5th Cir. 1999)).) As CHRISTUS points out, there are two problems with this argument. First, this case

20

involves an isolated allegation of sexual assault–not a pattern of gender discrimination or sexual harassment over a period or months or years. Furthermore, both Fifth Circuit cases cited by Rodriguez dismissed the plaintiffs' equal protection claims, and thus do not stand for the proposition she claims.

*Sanches* involved a high school student who brought a § 1983 action against her school district alleging violations of Title IX and the Equal Protection Clause based on sexual harassment by another student. In affirming summary judgment in favor of the school on plaintiff's equal protection claim, the Fifth Circuit explained that "any harassment was not based on her sex, so there [was] no constitutional violation." *Sanches*, 647 F.3d at 171. *Sharp* was an employment discrimination action involving a female police officer who sued the City of Houston and her supervisors for sexual harassment and retaliation in violation of Title VII and for "pervasive departmental misconduct" under § 1983, including claims of sexual harassment under the Equal Protection Clause and retaliation under the First Amendment. *Sharp*, 960 F. Supp. at 1165–66. The district court granted summary judgment in favor of the city on the plaintiff's sexual harassment claim under the Equal Protection Clause "because Sharp ha[d] adduced no evidence of a policy or custom of sexual harassment within the [police department]." *Id.* at 1177. On appeal, the Fifth Circuit never addressed the issue of whether an isolated incident of sexual assault rises to the level of an equal protection claim—in fact, the Equal Protection Clause isn't even mentioned in the Fifth Circuit's opinion. *See Sharp*, 164 F.3d 923.

Here, like the court in *Doe v. Beaumont ISD*, the Court is unable to locate any Fifth Circuit case at the district or circuit level recognizing that a state actor's isolated sexual assault of an individual could constitute a violation of the Equal Protection Clause. *See Doe v. Beaumont Indep. Sch. Dist.*, 8 F. Supp. 2d 596, 613 (E.D. Tex. 1998) (acknowledging that the court "was unable to find a case recognizing an equal protection claim under these facts," where parents

21

brought an equal protection claim against school alleging that a teacher sexually assaulted their eleven-year-old daughter). However, the Fifth Circuit's opinion in *Doe v. Taylor ISD* suggests that such a claim is more properly brought under the Due Process Clause. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 458 (5th Cir. 1994). *In Taylor ISD*, the court declined to determine whether a male teacher's molestation and statutory rape of a 15-year-old female student constituted an equal protection violation because the court had already determined that this conduct violated the plaintiff's substantive due process rights, and the plaintiff did "not claim that the damages that she could recover . . . based on [the teacher's] alleged violation of her equal protection rights would be any more extensive than the damages that she could recover based on the substantive due process violation." *Id.* at 458; *see also Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007) ("This Court declines to address the distinction between Plaintiff's equal protection and substantive due process claims because it would not have any impact on the Court's legal analysis" in sexual harassment action brought by female student against school district and board of trustees).

CHRISTUS has cited two cases in which other circuits have expressly held that an alleged sexual assault does not state a claim for equal protection. For example, in *Barney v. Pulsipher*, the Tenth Circuit declined to hold that a sexual assault of a female prison inmate stated a claim for damages under the Equal Protection Clause. *See Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998). Distinguishing the plaintiff's claim from an equal protection claim in an employment context, the court in *Barney* held that "[t]he Equal Protection Clause . . . is usually invoked to remedy disparities in educational, vocational, and recreational programs offered to male and female inmates." *Id.* at 1312 n.15. Instead, the court held that claims of sexual harassment were more properly analyzed under the Eighth Amendment. *Id.*; *see also Williams v. Prudden*, 67 F. App'x 976, 977 (8th Cir. 2003) (female prison inmate who alleged that prison

guard sexually assaulted her "failed to state an equal protection claim, as she did not allege any facts to show that she was treated differently from other similarly situated inmates"). Rodriguez attempts to distinguish these cases on the basis that she was not a prisoner and she is not alleging that she was denied conditions dissimilarly to male patients, but is instead alleging sexual assault motivated by her gender. However, as CHRISTUS aptly recognized, if this Court were to hold that a sexual assault, in itself, rises to the level of an equal protection violation, any plaintiff–male or female–alleging a sexual assault by a person acting under the "color of law" could automatically file suit under the Equal Protection Clause because any such assault would necessarily occur against one gender or the other.

Even if the Court were to recognize Rodriguez' claim of gender-motivated sexual assault as constituting a violation of the Equal Protection Clause–which the Court is not inclined to do–Rodriguez' equal protection claim would still fail because, as explained fully in Part II.C.2, *supra*, Rodriguez has presented no evidence that CHRISTUS had a custom or policy of improperly training its employees, that CHRISTUS failed to respond to complaints regarding such conduct, or that CHRISTUS acted with deliberate indifference to Rodriguez' rights. To the contrary, CHRISTUS has offered evidence that it had policies in place to fully train its employees with the intent of eliminating unlawful gender discrimination in the workplace. Specifically, CHRISTUS: (1) devotes an entire section of its Patients' Rights training materials to the inappropriateness of discrimination, including gender discrimination. (Dkt. No. 109, Ex. 5, Parts 1, 2, 3, 5); (2) requires its employees to complete diversity training, whereby employees are instructed to strictly comply with laws that prohibit workplace discrimination among and between co-workers, including Title VII of the Civil Rights Act of 1964 (*Id.* Part 8); and (3) trains its employees on treating patients ethically and with integrity, protecting against patient

abuse/neglect, patients' rights, and the inappropriateness of sexual harassment (*Id.* Parts 3,4, 6, 7).

Finally, the Court finds that Rodriguez has presented no evidence that Hill considered her alleged mental health disability as a motivating factor in his alleged actions. Furthermore, at the time of the alleged assault, Rodriguez was a mental health patient in a unit comprised of only patients with mental health disabilities, and Hill was employed as a mental health technician only in that unit. Rodriguez has failed to offer any evidence that Hill singled her out from among other similarly-situated patients for disparate treatment based on her alleged mental health disability with discriminatory intent, which is required to establish an equal protection violation. *See Williams*, 67 Fed. App'x at 977 (female inmate "failed to state an equal protection claim, as she did not allege any facts to show that she was treated differently from other similarly situated inmates").

Accordingly, the Court is of the opinion that CHRISTUS' Motion for Partial Summary Judgment on Plaintiff's Equal Protection Claims under 42 U.S.C. § 1983 should be **GRANTED**.

## IV. CHRISTUS' Motion for Judgment on the Pleadings Regarding Plaintiff's Claim under Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 81.010

Rodriguez' First Amended Complaint alleges that CHRISTUS is liable under Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 81.010–which provides for injunctive relief against a governmental unit based on sexual exploitation by a mental health services provider–because one of its employees sexually assaulted her while she was a patient. CHRISTUS now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure Rule 12(c) on the grounds that it is not a "governmental unit" as defined by Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ §§ 81.010 and 101.001(3)(B).

### A. Rule 12(c) Standard

A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and judgment on the merits of the case can be determined by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). In considering a Rule 12(c) motion, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). The Court "must look only to the pleadings and accept all allegations contained therein as true." *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (quoting *Brittan Communs. Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Id.* at 654–55 (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Thus, the Court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998). While a complaint need not contain detailed

factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

### B. Analysis

Rodriguez seeks injunctive relief, costs, and attorney's fees against CHRISTUS under Tex. Civ. Prac. & Rem. Code § 81.010(b), which provides that:

> [A] patient, a former patient, or another person acting on behalf of a patient or former patient may bring an action under this section against a governmental unit that is an employer of a mental health services provider, including a special officer for mental health assignment, who commits any conduct described by Section 81.002(1), (2), or (3) in relation to the patient or former patient. In an action brought under this subsection, the patient or former patient may obtain:
>
> (1) an order requiring the governmental unit to discharge the mental health services provider who committed the conduct;
>
> (2) court costs; and
>
> (3) reasonable attorney's fees, as determined by the court.

Tex. Civ. Prac. & Rem. Code § 81.010(b). Conduct described in § 81.002 includes:

> (1) sexual contact between the patient or former patient and the mental health services provider;
>
> (2) sexual exploitation of the patient or former patient by the mental health services provider; or
>
> (3) therapeutic deception of the patient or former patient by the mental health services provider.

TEX. CIV. PRAC. & REM. CODE § 81.002.

CHRISTUS originally moved for summary judgment on Rodriguez' § 81.010 claim on the grounds that Hill was not a "mental health services provider" under the meaning of the statute. (Dkt. No. 106.) The Court denied CHRISTUS' motion, finding "that Hill's serving as a 'guide' to monitor Rodriguez when she was suicidal, combined with the 15-minute observations of Rodriguez that Hill performed, is sufficient to raise a genuine issue of material fact as to whether Hill provided mental health services directly to Rodriguez." (Dkt. No. 166 at 3.)

CHRISTUS now moves for judgment on the pleadings on the grounds that it is not a "governmental unit" as defined by TEX. CIV. PRAC. & REM. CODE §§ 81.010 and 101.001(3)(B). Section 81.010 explicitly states that it applies only to "governmental units" that have "the meaning assigned by Section 101.001(3)(B)." TEX. CIV. PRAC. & REM. CODE § 81.010(a). Section 101.001(3)(B) defines "governmental unit" as:

> a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority.

TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B).

CHRISTUS acknowledges that, based on its contractual relationship with the Hospital District, the Texas Legislature has conferred limited "governmental unit" status upon it because it is a "hospital district management contractor" as defined by TEX. HEALTH & SAFETY CODE §§ 285.071 & 285.072. CHRISTUS further acknowledges that it qualifies as a "governmental unit" for purposes of TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D), which defines a "governmental unit" as "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas *or from laws passed by the legislature under the*

*constitution*.**" TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D) (emphasis added). However, because CHRISTUS is not a political subdivision of Texas and does not fall within the meaning of Subsection 101.001(3)(B), CHRISTUS argues that Rodriguez' § 81.010 claim should be dismissed as a matter of law.

In response, Rodriguez claims that CHRISTUS is a governmental unit as defined by TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B) because "CHRISTUS is not a separate 'governmental unit' apart from the Nueces County Hospital District" and ""[p]ublic health districts' such as the Nueces County Hospital District are specifically identified in Texas Civil Practice & Remedies Code Section 101.001(3)(B)." (Dkt. No. 183 at 7–8.) However, as CHRISTUS correctly points out, "Rodriguez has not and cannot point to any statutory or legal authority holding that a hospital district management contractor like CHRISTUS is transformed into a hospital district merely by virtue of its contractual relationship . . . because such authority does not exist." (Dkt. No. 183 at 10.)

A plain reading of the statute shows that CHRISTUS is not a political subdivision of Texas and is not a "governmental unit" as defined by TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B). As such, CHRISTUS is not subject to liability under § 81.010. Even so, Rodriguez maintains that CHRISTUS should nonetheless be estopped from asserting its immunity for a number of reasons, none of which the Court finds persuasive.

Rodriguez first argues that CHRISTUS should be precluded from claiming that it is not a governmental unit under § 81.010 because CHRISTUS "failed to deny her allegations and to plead this defense as required by FRCP 8" and "did not deny [her] allegations with enough specificity to place [her] on notice that CHRISTUS would pursue a claim that it was not a governmental entity." (Dkt. No. 183 at 3.) However, the record shows that CHRISTUS specifically denied in its Answer that it was a governmental unit under TEX. CIV. PRAC. & REM.

CODE § 81.010. Rodriguez alleged in Paragraph 38 of her First Amended Complaint, "This cause of action is plead against CHRISTUS because they are a 'governmental unit'. Ms. Rodriguez seeks the remedies, rights and damages afforded by Texas Health and Safety Code Chapter 81 as if CHRISTUS is a 'governmental unit.'" (Pl. First Amended Compl. ¶ 38.) In its Answer, CHRISTUS admitted that it was "a 'governmental unit' for purposes of Chapters 101, 102 and 108 of the Texas Civil Practice and Remedies Code pursuant to Texas Health and Safety Code § 285.071 and § 285.072," but CHRISTUS "den[ied] the remainder of the allegations contained in Paragraph 38." (Def. Answer ¶ 38.) Thus, CHRISTUS properly put Rodriguez on notice that it disputed that it was a governmental unit under § 81.010.

Next, Rodriguez claims that CHRISTUS was required to plead in its Answer, as an affirmative defense, that Rodriguez had failed to prove that CHRISTUS is the type of governmental unit subject to § 81.010. By definition, an affirmative defense is a "defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY (9th ed. 2009). "[A]ccord and satisfaction; arbitration and award; assumption of risk; contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and waiver" are set forth in the Federal Rules as affirmative defenses that must be plead in a party's response. FED. R. CIV. P. 8(c)(1). Here, CHRISTUS does not attempt to assert any of the defenses listed in Rule 8(c), nor does it admit that all of the allegations in Rodriguez' Complaint are true. Instead, CHRISTUS' Answer explicitly denied Rodriguez' allegation that she "ha[d] met all prerequisites of Chapter 81 of the Civil Practice and Remedies Code to bring this claim." (Pl. First Amended Compl., Dkt. No. 141, ¶ 40, Def. Answer, Dkt. No. 142, ¶ 40.) "A denial that an essential element of a claim exists is not the same as an affirmative defense to the claim and need

not be included in the answer under [R]ule 8(b)." *Am. Gooseneck, Inc. v. Watts Trucking Serv., Inc.*, 159 F.3d 1355, 1998 WL 698937, *4 (5th Cir. 1998) (unpublished) (comparing Rule 8(b) with Rule 8(c); *see also S.E.C. v. Jantzen*, 2011 WL 250322, *2 (W.D. Tex. Jan 25, 2011) (denial of elements of plaintiff's *prima facie* case is not a proper affirmative defense).

Rodriguez next argues that CHRISTUS made a judicial admission that it was a governmental unit for purposes of § 81.010 when it stated in the background section of its Motion for Summary Judgment on Plaintiff's Section 81.010 Claims that "Rodriguez's claim under Section 81.010 of the Texas Civil Practice and Remedies Code remains, as CHRISTUS was found to be a 'governmental unit' for purposes of this Section." (Dkt. No. 106 at 4.) "To qualify as a judicial admission, the statement must be (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based." *Heritage Bank v. Redcom Lab., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (citing *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 419 (Tex. 1960)). CHRISTUS admits that it "was making a legal conclusion (albeit an erroneous one) in the language quoted by Ms. Rodriguez" and argues that "whether a governmental unit can be sued under a particular legal provision is a question of law for the court to consider." (Dkt. No. 189, Ex. 1 at 8 (citing *Hall v. Provost*, 232 S.W.3d 926 (Tex. App.–Dallas 2007, no pet.).) The Court agrees that whether CHRISTUS is a governmental unit for purposes of § 81.010 is a question of law, not fact. Because "[a] party may not judicially admit a question of law," Rodriguez' argument fails. *See H.E. Butt Grocery Co. v. Pais*, 955 S.W.2d 384, 389 (Tex. App.–San Antonio 1997, no pet.).

Finally, Rodriguez claims that CHRISTUS' motion violates the "law of the case" doctrine, which provides that "an issue of law or fact decided on appeal may not be reexamined

either by the district court on remand or by the appellate court on a subsequent appeal." *Illinois Cent. Gulf R.R. v. International Paper Co.*, 889 F.2d 536, 539 (5th Cir.1989), *abrogated on other grounds as recognized by United States v. Farias*, 481 F.3d 289, 291-92 (5th Cir.2007). According to Rodriguez, because the Fifth Circuit determined that CHRISTUS is a "governmental unit" for purposes of the Texas Tort Claims Act, it is, *per se*, a "governmental unit" for purposes of Section 81.010.

As noted in Part I, *supra*, CHRISTUS previously filed an interlocutory appeal of Judge Jack's determination that it did not have immunity from suit for purposes of Rodriguez' state-law claims. The Fifth Circuit reversed, finding that CHRISTUS is a governmental unit as defined by the Texas Tort Claims Act and is immune to liability under that Act. *See Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010). With respect to Rodriguez' claim under § 81.010, the court wrote:

> In the second claim, under Chapter 81 of the Texas Civil Practice and Remedies Code—the Sexual Exploitation by Mental Health Provider Act, Rodriguez alleges that she was sexually assaulted by Hill—an employee of CHRISTUS. Here, she claims personal injury for which she seeks monetary damages and/or equitable relief. This claim also sounds in tort. However, Chapter 81 contains a partial waiver of immunity. Section 81.010 allows a cause of action as defined in § 81.002 against governmental units but only for "(1) an order requiring the governmental unit to discharge the mental health services provider who committed the conduct; (2) court costs; and (3) reasonable attorney's fees, as determined by the court." Since CHRISTUS is "considered a governmental unit for the purposes of [the Tort Claims Act]," it enjoys the same level of partial immunity. Thus, it is immune to any claim under Chapter 81 except as allowed by § 81.010. Rodriguez's Chapter 81 claim must be dismissed, except to the extent that it falls under § 81.010.

*Id.* at 736–37 (internal citations omitted).

The "law of the case" doctrine "covers issues decided both expressly and by necessary implication, and reflects the jurisprudential policy that once an issue is litigated and decided, 'that should be the end of the matter.'" *United States v. Pineiro*, 470 F.3d 200, 205 (5th Cir.

2006) (quoting *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004)). Because the Fifth Circuit never addressed whether CHRISTUS is a governmental unit as defined by TEX. CIV. PRAC. & REM. CODE § 101.001(3)(B), and therefore whether Rodriguez' claim falls under § 81.010, the "law of the case" doctrine is inapplicable here.

Accordingly, the Court is of the opinion that CHRISTUS' Motion for Judgment on the Pleadings Regarding Plaintiff's Claim under Texas Civil Practice and Remedies Code Section 81.010 should be **GRANTED**. As such, Rodriguez' Motion and Amended Motion for Partial Summary Judgment on Liability on Plaintiff's Texas Civil Practice & Remedies Code § 81.010 Claim are **DENIED**.

## V. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. CHRISTUS' Motion for Partial Summary Judgment on Plaintiff's Due Process Claims Under 42 U.S.C. § 1983 (Dkt. No. 109) is **GRANTED**;

2. CHRISTUS' Motion for Partial Summary Judgment on Plaintiff's Equal Protection Claims Under 42 U.S.C. § 1983 (Dkt. No. 175) is **GRANTED**;

3. CHRISTUS' Motion for Judgment on the Pleadings Regarding Plaintiff's Claim under Texas Civil Practice and Remedies Code Section 81.010 (Dkt. No. 177) is **GRANTED**; and

4. Rodriguez' Motion and Amended Motion for Partial Summary Judgment on Liability on Plaintiff's Texas Civil Practice & Remedies Code § 81.010 Claim (Dkt. Nos. 178, 179) are **DENIED**.

**SIGNED** this 13th day of June, 2012.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE